CORNELIA G. KENNEDY, Circuit Judge.
 

 Appellant, Stephens Industries, Inc. (“SI”), appeals from the District Court’s order affirming the Bankruptcy Court’s order approving the sale of the assets of the debtor, American Signal Corporation (“ASC”), a/k/a WPRT AM/FM Radio Station. From 1952 until 1980, SI owned and operated radio station WPRT in Prestons-burg, Kentucky. In July 1980, SI sold the radio station to ASC. Under the purchase agreement, SI transferred all the radio station’s assets to ASC and applied to the FCC for formal transfer of the broadcasting licenses. ASC agreed to pay a small down payment and signed a $252,000 promissory note payable over a nine-year period for the balance of the purchase price. As part of the transaction, ASC granted SI a mortgage and security lien on the conveyed assets to secure the unpaid balance of the purchase price.
 

 ASC made installment payments until 1982, when it defaulted. SI commenced a civil action in the Floyd County, Kentucky Circuit Court to foreclose on the mortgage and for return of all the property conveyed to ASC in 1980. As a result of the civil action, ASC filed for Chapter 11 in the Bankruptcy Court for the United States District Court for the Eastern District of Kentucky on December 17, 1982 seeking protection from SI and all its other secured and unsecured creditors. Under Chapter 11, ASC maintained the radio station as a debtor in possession until ASC abandoned this status and the Bankruptcy Court appointed James R. McClung as trustee on September 23, 1983. When the trustee took control of ASC’s estate, the estate consisted of two small tracts of land where the radio station had built its AM and FM antennae, various broadcasting and office equipment, and the two FCC licenses. In addition, ASC had leased some broadcasting equipment from Rockwell International Corporation (“Rockwell”). ASC had encumbered all its physical assets for more than their value. Court-appointed appraisers concluded that the tracts of land were worth $4,500 and that the leased equipment was worth approximately $29,645. Besides secured creditors, ASC had numerous unsecured creditors and owed taxes and administrative expenses to various priority creditors. The trustee was unable to operate the radio station at a profit. Eventually, the trustee faced the prospect of shutting down operations because ASC’s dilapidated equipment was failing and ASC could not meet payroll and other necessary operating expenses. ASC’s only unencumbered assets were the FCC licenses. If the station went off the air for an extended period of time, however, FCC rules could require forfeiture of the licenses. Consequently, the trustee decided to sell the radio station as a going concern and to propose a plan of liquidation under 11 U.S.C. § 1123(a)(5)(D) and (b)(4).
 

 In August 1984, the trustee signed an agreement to sell ASC’s assets to James C. Ball and Robert Smallwood for $275,000 over an eleven-year payment period subject to the Bankruptcy Court’s approval. The parties later modified the purchase price to $200,000 cash. On October 31, 1984, the trustee filed a motion in the Bankruptcy Court asking for authorization to sell ASC's assets to Ball and Smallwood. On November 10, 1984, SI filed an objection to the proposed sale and requested that the Bankruptcy Court lift the automatic stay of the proceedings in the Floyd County Circuit Court. At a hearing on the proposed sale on November 19, 1984, the Bankruptcy Court gave SI until November 28, 1984 to make a counteroffer to purchase ASC’s assets “for a sum in excess of $200,000.00 in cash.” SI responded but its counteroffer did not mention cash or a sum certain of money. Instead, SI proposed to “set off” its claimed lien of approximately $300,-000 in exchange for ASC’s tangible property and the licenses. SI offered to deposit earnest money and an unspecified bond. In a November 30, 1984 order, the Bankruptcy Court ruled that Si’s counteroffer
 
 *388
 
 did not match the $200,000 cash offer from Ball and Smallwood. The Bankruptcy Court rejected Si's counteroffer
 
 sub silen-tio
 
 concluding that since SI could not have a secured lien on the FCC licenses, SI only had a $7,900 secured lien. Although the Bankruptcy Court “[was] dissatisfied with the evidence as to the nature and extent of the advertising done by the debtor in possession in an attempt to effectuate a sale of the debtor’s radio station,” the Bankruptcy Court entered an order on November 30, 1984 approving the sale to Ball and Smallwood for $200,000 cash. The Bankruptcy Court noted that: “The debtor is without funds to continue operation of the station while attempting to effectuate a better sale.”
 

 On December 5, 1984, SI moved to modify, amend or set aside the November 30, 1984 order claiming that the Bankruptcy Court misunderstood Si’s counteroffer. On December 10, 1984, SI moved to hold the closing of the sale to Ball and Small-wood in abeyance until the Bankruptcy Court could hear the motion to modify, amend or set aside the previous order. On December 11, 1984, the Bankruptcy Court stayed the closing until December 13, 1984 so that SI could make a cash bid on the property. SI, however, failed to submit a cash bid and the trustee closed the sale of the property pending FCC approval. Pursuant to the Bankruptcy Court’s directions, the trustee placed the proceeds in escrow. On December 18, 1984, the Bankruptcy Court heard Si’s motion to modify, amend or set aside the December 10, 1984 order. On January 9, 1985, the Bankruptcy Court entered an order overruling Si’s motion. SI appealed to the United States District Court for the Eastern District of Kentucky. The District Court affirmed the Bankruptcy Court’s order approving the sale and overruling Si’s motions to lift the automatic stay and to stay the sale of ASC’s assets.
 

 Essentially, SI raises three issues in this appeal: (1) Whether the Bankruptcy Court erred in approving the sale of ASC’s assets because the sale prejudiced Si’s rights as a secured creditor under Chapter 11; (2) Whether the Bankruptcy Court abused its discretion in approving the sale because the trustee did not sell the assets in a commercially reasonable manner; and (3) Whether the Bankruptcy Court’s refusal to grant SI adequate protection by lifting the automatic stay so that SI could pursue its remedies in the Floyd County Circuit Court foreclosure action constituted an abuse of discretion. For the reasons set forth below, we affirm the District Court’s order affirming the Bankruptcy Court’s order approving the sale of the assets and refusing to lift the automatic stay.
 

 I.
 

 Initially, SI argues that the Bankruptcy Court erred in approving the sale of ASC’s assets under 11 U.S.C. § 363(b)(1)
 
 [1]
 
 because the sale prejudiced Si’s rights as a secured creditor. The District Court affirmed the Bankruptcy Court’s order authorizing the sale of ASC’s assets. In reviewing a district court order regarding the final order of a bankruptcy court, this Court, in essence, reviews the final order of the bankruptcy court.
 
 See In re Global Western Development Corporation,
 
 759 F.2d 724, 726 (9th Cir.1985).
 

 Title 11 U.S.C. § 363(b)(1) allows a bankruptcy court, after notice and hearing, to authorize the sale of the debtor’s assets outside the ordinary course of business. In
 
 In re Coastal Cable T. V., Inc.,
 
 24 B.R. 609, 611 (Bankr. 1st Cir.1982),
 
 vacated, on other grounds,
 
 709 F.2d 762 (1st Cir.1983), the Bankruptcy Appellate Panel for the First Circuit stated that: “This power falls within the sound discretion of the trial court.”
 
 See also In re Ancor Exploration Company,
 
 30 B.R. 802, 808 (Bankr.N.D.Okla.1983) (“the bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)”). Accordingly, we review the Bankruptcy Court’s order authorizing the sale of the assets under an abuse of discre
 
 *389
 
 tion standard. As the Ninth Circuit stated in
 
 In re Posner,
 
 700 F.2d 1243, 1246 (9th Cir.),
 
 cert. denied,
 
 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983), “a reviewing court may determine that the Bankruptcy Court abused its discretion only when there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of all the relevant factors.”
 

 In determining whether the Bankruptcy Court abused its discretion, this Court reviews the Bankruptcy Court’s findings of fact under the “clearly erroneous” standard. Bankr. R. 8013. We review the Bankruptcy Court’s conclusions of law, however, de novo.
 
 See In re Golf Course Builders Leasing, Inc.,
 
 768 F.2d 1167, 1169 (10th Cir.1985);
 
 In re Global Western Development Corporation, supra.
 

 SI contends that § 363(b)(1) does not permit a Chapter 11 trustee to liquidate ASC’s assets because such action would change a Chapter 11 reorganization, 11 U.S.C. §§ 1101-1146, into a Chapter 7 liquidation, 11 U.S.C. §§ 701-728. SI cites
 
 In re Brants Airways, Inc.,
 
 700 F.2d 935,
 
 reh’g denied,
 
 705 F.2d 450 (5th Cir.1983), to support its position. In
 
 Braniff,
 
 the Fifth Circuit held that the district court could not approve, under § 363(b), a transaction providing for Braniff’s transfer of cash, airplanes and equipment, terminal leases and landing slots in exchange for travel scrip, unsecured notes, and a profit participation in the proposed operation. The court viewed the transaction as “in fact a reorganization.”
 
 Id.
 
 at 940. The Fifth Circuit, however, expressly reserved the question whether § 363(b) authorizes the sale of all of a debtor’s assets.
 
 Id.
 
 at 939.
 
 See also Richmond Leasing Co. v. Capital Bank, N.A.,
 
 762 F.2d 1303, 1311-12 n. 10 (5th Cir.1985).
 

 In
 
 In re Lionel Corporation,
 
 722 F.2d 1063 (2d Cir.1983), the Second Circuit discussed the circumstances under which a bankruptcy judge can authorize, prior to the acceptance of and outside any plan of reorganization under Chapter 11, the sale of an important asset of the debtor’s estate, outside the ordinary course of business. After studying the statute’s predecessors, the legislative history surrounding the enactment of current Chapter 11 in 1978, and the statute’s underlying logic, the Second Circuit concluded “that there must be some articulated business justification ... for using, selling, or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under section 363(b).”
 
 Id.
 
 at 1070. Accordingly, the court adopted a rule requiring that the bankruptcy judge “expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.”
 
 Id.
 
 at 1071. Finally, the Second Circuit attempted to provide some guidance for the bankruptcy courts by stating:
 

 In fashioning its findings, a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather, he should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.
 

 Id.
 

 Furthermore, other courts that have considered the question whether a bankruptcy court can authorize the sale of all a debtor’s assets under § 363(b) have concluded that, at least in certain circumstances, a bankruptcy court can authorize such a sale.
 
 See, e.g., In re Brookfield Clothes, Inc.,
 
 31 B.R. 978 (S.D.N.Y.1983);
 
 In re Ancor Exploration Company, supra; In re Charlesbank Laundry Co.,
 
 37 B.R. 20
 
 *390
 
 (Bankr.D.Mass.1983);
 
 In re Boogaart of Florida, Inc.,
 
 17 B.R. 480 (Bankr.S.D.Fla.1981);
 
 In re White Motor Credit Corporation,
 
 14 B.R. 584 (Bankr.N.D. Ohio 1981) (relying on 11 U.S.C. § 105);
 
 In re WHET, Inc.,
 
 12 B.R. 743 (Bankr.D.Mass.1981). We adopt the Second Circuit’s reasoning in
 
 In re Lionel Corporation, supra,
 
 and conclude that a bankruptcy court can authorize a sale of all a Chapter 11 debtor’s assets under § 363(b)(1) when a sound business purpose dictates such action.
 

 The Bankruptcy Court implicitly found that an articulated business reason justified the sale. The trustee had been unable to operate the radio station at a profit. Since ASC could not meet its payroll and other operating expenses, the trustee faced the prospect of ceasing operations. If the station went off the air for an extended period of time, ASC could lose its FCC licenses. Consequently, we conclude that the Bankruptcy Court did not abuse its discretion in approving the sale of ASC’s assets.
 

 SI was the only creditor to object to the proposed sale. In fact, SI did not object to the sale of the assets, but only to the sale of the assets to Ball and Smallwood. The Bankruptcy Court gave SI every opportunity to submit a cash bid for ASC’s assets but SI failed to do so. Instead, SI offered to “set off” its claim in exchange for ASC’s tangible property and broadcast licenses. The Bankruptcy Court refused to accept this counteroffer because SI only had a $7,900 secured lien. Although SI claimed a secured lien on the broadcast licenses, the Bankruptcy Court
 
 sub silentio
 
 refused to recognize Si’s claim on the ground that federal law does not permit liens on federal broadcasting licenses.
 

 SI contends that the Bankruptcy Court erred in refusing to include the FCC licenses as part of the property that Si’s mortgage secured. Although the Bankruptcy Court has not yet specifically ruled on the question of whether Si’s mortgage includes the FCC licenses for the purposes of determining the distribution of the sale proceeds, the Bankruptcy Court
 
 sub silentio
 
 decided that Si’s mortgage did not cover the FCC licenses in rejecting Si’s counteroffer to “set off” the amount of its secured lien.
 
 [2]
 

 We hold that the Bankruptcy Court did not err in concluding that Si’s mortgage did not include the FCC licenses. In
 
 In re Merkley,
 
 94 F.C.C.2d 829, 54 Rad.Reg.2d 68, 70 (1983) (citations omitted), the Federal Communications Commission (“FCC”) stated: “The Commission has consistently held that a broadcast license, as distinguished from the station’s plant or physical assets, is not an owned asset or vested property interest so as to be subject to a mortgage, lien, pledge, attachment, seizure, or similar property right.”
 
 See also In re Radio KDAN, Inc.,
 
 11 F.C.C.2d 934, 12 Rad.Reg.2d 584,
 
 reconsideration denied,
 
 12 F.C.C.2d 1026, 13 Rad.Reg.2d 100 (1968),
 
 affirmed on other grounds sub nom. W.H. Hansen v. Federal Communications Commission,
 
 413 F.2d 374 (D.C.Cir.1969). Furthermore, 47 C.F.R. § 73.1150(a) provides:
 

 In transferring a broadcast station, the licensee may retain no right of reversion of the license, no right to reassignment of the license in the future, and may not
 
 *391
 
 reserve the right to use the facilities of the station for any period whatsoever.
 

 Si's brief recognizes this authority but contends that under an FCC-created “fiction,” “a broadcast license was held to follow and be tied to a station’s hard, tangible, physical assets.” SI contends that since a licensee could not sell a naked FCC license, then conversely the licensee could not transfer the hard assets without the FCC license. Somehow, SI concludes that since it had a mortgage on ASC’s hard assets, it had a mortgage on the FCC licenses. We reject Si’s argument.
 

 Since the Bankruptcy Court did not err in concluding that SI did not have a secured claim on the FCC licenses, we conclude that the Bankruptcy Court did not abuse its discretion in approving the $200,000 cash offer rather than Si’s “set off” counteroffer. We also note that Rockwell had a security interest on the broadcasting equipment that ASC had acquired after its purchase of the radio station from SI. Si’s “set off” proposal would have left Rockwell with nothing even though Rockwell’s claim had priority. In addition, the “set off” proposal also would have adversely affected unsecured creditors and priority creditors having claims for taxes and administrative expenses. In fact, the $200,-000 sale preserved the value of the estate for ASC’s creditors. Finally, a lien on the proceeds of the sale protects any claim that SI may have had on ASC’s assets. Consequently, the Bankruptcy Court did not err in approving the sale.
 

 II.
 

 SI contends that since the trustee did not arrange the sale in a commercially reasonable manner, the Bankruptcy Court abused its discretion in approving the sale. Although the Bankruptcy Court expressed dissatisfaction “with the evidence as to the nature and extent of the advertising done by the debtor in possession in an attempt to effectuate a sale of the debtor’s radio station,” the Bankruptcy Court also recognizing that “[t]he debtor is without funds to continue operation of the station while attempting to effectuate a better sale.” Since the station’s failure to continue operations would jeopardize ASC’s FCC licenses, ASC could have lost its only unencumbered asset while trying to arrange a better deal. Under the circumstances, the Bankruptcy Court did not abuse its discretion in approving the sale.
 

 III.
 

 Finally, SI argues that the Bankruptcy Court abused its discretion in refusing to lift the automatic stay so that SI could pursue its remedies in the Floyd County Circuit Court foreclosure action. Title 11 U.S.C. § 362(d) provides:
 

 On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
 

 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
 

 (2) with respect to a stay of an act against property under subsection (a) of this section, if—
 

 (A) the debtor does not have an equity in such property; and
 

 (B) such property is not necessary to an effective reorganization.
 

 Since 11 U.S.C. § 362(d) commits the decision whether to lift the automatic stay to the discretion of the bankruptcy court, this Court will overturn the Bankruptcy Court’s decision only upon a showing of abuse of discretion.
 
 See In re Holtkamp,
 
 669 F.2d 505, 507 (7th Cir.1982).
 
 See also Cathey v. Johns-Manville Sales Corporation,
 
 711 F.2d 60, 63 (6th Cir.1983).
 

 SI argues that the Bankruptcy Court should have lifted the automatic stay under 11 U.S.C. § 362(d)(2). Before lifting the stay under § 362(d)(2), the Bankruptcy Court would have had to find that ASC did not have an equity in the FCC licenses, which SI sought to foreclose, and that the licenses were not necessary to an effective reorganization. SI claims that ASC “represented and acknowledged that it did not have any equity in the property and the property was obviously not necessary to an effective reorganization, since no reorgani
 
 *392
 
 zation had ever been planned or proposed.
 
 ...”
 
 SI does not cite any authority for the claim that ASC did not have an equity in the FCC licenses. In
 
 In re Mellar,
 
 734 F.2d 1396, 1400 n. 2 (9th Cir.1984) (citation omitted), the Ninth Circuit stated that: “ ‘Equity,’ ... is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors.” In this case, the FCC licenses were ASC’s only unencumbered asset. Since ASC had an equity in the FCC licenses, we conclude that the Bankruptcy Court did not abuse its discretion in refusing to lift the automatic stay order.
 

 Accordingly, we affirm the District Court’s order affirming the Bankruptcy Court’s order approving the sale and refusing to lift the automatic stay.
 

 [1]
 

 . Title 11 U.S.C. § 363(b)(1) provides:
 

 The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.
 

 [2]
 

 . At the December 18, 1984 hearing on Si’s motion to set aside the November 30, 1984 order authorizing the sale, the Bankruptcy Court stated:
 

 The court will set a hearing later on at which the court will hear evidence as to the value of these tracts of real estate and the value of the particular items of equipment that still are in existence that are covered by sales contract from Stephens Industries, for the purpose of determining how much of the proceeds he has a lien on, with respect to that tangible property, real and personal property. And then the court will later on rule on the issue, as I understand it, that is submitted pretty much on the issue of whether or not this documentation or the mortgage agreements between Stephens Industries and American Signal when they sold it is sufficient to create a security interest in the two licenses, the two radio station licenses, and the court will rule on that separately.
 

 Consequently, the Bankruptcy Court directed the trustee to place the proceeds from the sale in escrow with the understanding that whatever liens SI had on ASC’s assets would attach to the proceeds of the sale.