## In re TITUSVILLE COUNTRY CLUB, a Pennsylvania Non–Profit Corporation, Debtor.

**TITUSVILLE COUNTRY CLUB and Joseph E. Altomare, Movants,**

v.

**PENNBANK, United States of America, Internal Revenue Service, Commonwealth of Pennsylvania, Department of Revenue, Commonwealth of Pennsylvania, Department of Labor & Industry, Oil Creek Township, Borough of Hydetown, City of Titusville, Crawford County Tax Claim Bureau, Etonic, Inc., Aureus Ltd., Barry Mallory and Thomas J. McKinney, Respondents.**

Bankruptcy No. 90–00860E.
Motion No. 91–615.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 5, 1991.

Richard W. Roeder, Titusville, Pa., for Debtor.

Joseph E. Altomare, Titusville, Pa., pro se and for Debtor.

Guy C. Fustine, Erie, Pa., for Official Committee of Unsecured Creditors.

James M. Greenfield, Franklin, Pa., for Hasbrouck Sand & Gravel, Inc.

James H. Richardson, Erie, Pa., for Pennbank.

James R. Walczak, Erie, Pa., for Thomas J. McKinney.

WARREN W. BENTZ, Bankruptcy Judge.

## OPINION [1]

Titusville Country Club, a Pennsylvania Non–Profit Corporation ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 16, 1990. Debtor's assets consist of a golf course, club house, pro shop, bar, restaurant, and pool together with related equipment and supplies ("Assets").

The Debtor negotiated the sale of its Assets to Thomas J. McKinney ("McKinney") and presented a Motion to Sell Real and Personal Property Free and Divested of Liens ("Motion to Sell") pursuant to Bankruptcy Code § 363.

At the same time, the Debtor also presented a Motion for Expedited Hearing requesting that the sale take place on an expedited basis due to the seasonal nature of the business and the necessity of completing the sale before too much of the golfing season elapsed. The Motion for Expedited Hearing was granted and a hearing on the Motion to Sell was fixed for April 30, 1991.

Attached to the Motion to Sell was a written agreement between the Debtor and McKinney entitled Real Estate and Asset Purchase Agreement ("Agreement") which set forth the terms of sale. The Agreement provides, *inter alia,* that the Debtor agrees to sell its Assets to McKinney for the sum of $350,000 cash; that McKinney intends to use the premises as a golf course but that the Agreement shall not be construed to limit or defeat any contemplated use of the premises by McKinney; and that the Agreement constitutes the entire agreement of the parties. The Agreement bears the signatures of the President of the Debtor and McKinney.

---

1. This Opinion constitutes the Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052, which is made applicable to this contested matter by Bankruptcy Rule 9014.

The Debtor filed a Certificate of Service indicating that notice of the hearing was mailed to all creditors and parties in interest on April 18, 1991. Notice of the hearing was also given by publication in the appropriate legal journal and newspaper of general circulation. The notice of the hearing advised, *inter alia*, of the proposed sale and that objections to the sale and higher offers would be received at the hearing.

The hearing was held as scheduled on April 30, 1991. No objections to the sale procedure or to the sale of the Debtor's Assets were presented prior to, or at any time during, the hearing. At the hearing, an additional bidder, Hasbrouck Sand & Gravel, Inc. ("Hasbrouck"), was present and prepared to bid substantially more than the proposed sale price of $350,000. Hasbrouck stated that the basic terms of the Agreement were acceptable and that its bid was unconditional. The Court then conducted a public auction in which McKinney and Hasbrouck participated, with Hasbrouck submitting the highest and final bid of $510,000. The proposed sale price of $350,000 would have provided unsecured creditors a dividend of approximately 70% of their claims. The final sale price of $510,000 will enable unsecured creditors to be paid the full amount of their claims.

By Order dated May 1, 1991, we confirmed the sale to Hasbrouck. On May 10, 1991, the Debtor filed a Motion for Reconsideration of our Order confirming the sale. By Order dated May 10, 1991, we stayed the sale to Hasbrouck pending resolution of the Debtor's Motion for Reconsideration and fixed a hearing thereon for May 22, 1991. On May 15, 1991, Hasbrouck filed a Motion to Intervene, which the Court granted on May 18, 1991. On May 17, 1991, Joseph Altomare, Esq. ("Altomare"), Debtor's counsel, filed a *pro se* Motion to Intervene and for leave to file an identical Motion for Reconsideration which the Court granted on May 22, 1991.

Both Motions for Reconsideration incorporate a revised agreement between the Debtor and McKinney, the terms of which obligate McKinney to pay a price sufficient to pay all claims against the Debtor in full and further obligate McKinney to continue to operate the Assets as a golf club and provide the Debtor an opportunity to redeem the Assets by option to repurchase, exercisable within ten years.

At the hearing on May 22, 1991, Altomare appeared on behalf of the Debtor and himself; Guy C. Fustine, Esq. appeared on behalf of the Unsecured Creditors' Committee and James M. Greenfield, Esq. appeared on behalf of Hasbrouck. Arguments on the Motions for Reconsideration were presented by counsel and the Court established a briefing schedule.

On June 17, 1991, after consideration of the briefs, arguments and assertions of the parties, we vacated our stay of the May 1, 1991 Sale Confirmation Order and ordered that closing on the sale of the Debtor's Assets proceed to Hasbrouck.

### Issues

1. Whether sale of all of the Debtor's Assets is permissible outside of a confirmed plan of reorganization.

2. Whether Hasbrouck made the highest and best offer.

### Discussion

The issue of whether the Debtor is permitted to sell all or substantially all its Assets prior to confirmation of a plan of reorganization arises due to a tension between 11 U.S.C. §§ 1121–29, which provide that a debtor ordinarily must obtain confirmation of a plan of reorganization before selling substantially all of its assets and 11 U.S.C. § 363(b)(1), which provides:

§ 363. Use, sale or lease of property

. . .

(b)(1) The [debtor-in-possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b). *See also* 11 U.S.C. § 103, 11 U.S.C. § 1107.

Thus, a Chapter 11 debtor which desires to sell assets outside the ordinary course of business prior to confirmation of

a plan of reorganization must comply with § 363.

In addition to the notice and hearing required by § 363, a substantial body of case law has developed imposing limitations on a Chapter 11 debtor's right to sell all of its assets prior to plan confirmation.

The predecessor to § 363, § 116(3) of the Bankruptcy Act of 1938, imposed stricter requirements on a Chapter 11 debtor who proposed to sell all of its assets without the benefit of a confirmed plan. Such a sale was only permitted for "cause shown" which was interpreted to mean that such a sale should be confined to situations involving an emergency; where assets of the debtor would be lost if prompt action was not taken. *In re Solar Manufacturing Corp.*, 176 F.2d 493 (3rd Cir.1949).

Section 363 of the Bankruptcy Code of 1978 deletes the reference to "cause shown." The Bankruptcy Court is no longer bound by the strict standards of "emergency" or "perishability." The Second and Sixth Circuits, as well as other courts, have determined that a Chapter 11 debtor must meet a "sound business purpose" test for conducting the sale prior to confirmation of a plan. *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir.1986); *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir. 1983); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D.Del.1991); *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15 (Bankr. E.D.Pa.1987); *In re Sovereign Estates, Ltd.*, 104 B.R. 702 (Bankr.E.D.Pa.1989).

The "sound business purpose" test has four requirements:

1. Sound business reason
2. Accurate and reasonable notice
3. Price is adequate (fair and reasonable)
4. Good faith exists.

*See In re Delaware & Hudson Ry. Co.*, 124 B.R. at 176; *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. at 21.

The Third Circuit has not squarely addressed the issue of whether the *Solar* decision has continued validity under § 363.

However, in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986), the Court of Appeals examined a pre-confirmation sale. The Court of Appeals held that "when a bankruptcy court authorizes a sale of assets pursuant to § 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." Id. at 149–50.

The Court of Appeals did not mention the *Solar* decision which has led other courts to the conclusion that the Third Circuit follows the "sound business purpose" test rather than the "emergency" rule. *See In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.Del.1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702 (Bankr.E.D.Pa. 1989); *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 20 (Bankr.E.D.Pa.1987); *In re Coastal Industries, Inc.*, 63 B.R. 361, 366–67 (Bankr.N.D.Ohio 1986).

We believe the "sound business purpose" test is appropriate. We find that the facts of this case not only meet the "sound business purpose" test, but also meet the stricter standard of "emergency" enunciated in *Solar*.

The Debtor initiated the sale of its Assets. The Agreement between the Debtor and McKinney was signed by an officer of the Debtor and McKinney. Both parties were represented by counsel. The Debtor properly noticed and advertised the sale.

The Agreement called for a conveyance to McKinney free of restrictions. Hasbrouck purchased the Assets in good faith at a public auction conducted in open court after appropriate notice and subject to the same terms and conditions as provided in the Agreement between the Debtor and McKinney. Hasbrouck paid $160,000 more for the Assets than the agreed upon price with McKinney. The price is adequate. Debtor's assertion, subsequent to confirmation of the sale, that there were oral agreements between the Debtor and McKinney as to restrictions on the title cannot be entertained. The Agreement itself stated that "[t]his Agreement ... constitutes the entire agreement of the parties."

Debtor sought an expedited sale hearing because of the deterioration of the golf course and the need for maintenance which was granted by the Court. An emergency existed. Even Altomare, along with his Motion for Reconsideration, requested an Expedited Argument.

The Debtor was relying on the future goodwill of McKinney to keep the club open; McKinney was willing to help by buying the Assets as long as he got unrestricted title. Hasbrouck disappointed McKinney and the Debtor.

The Debtor and McKinney could easily have arranged their deal to the exclusion of outside bidders prior to the sale by proposing a plan of reorganization funded by McKinney with their mutual rights spelled out. We therefore must conclude that the mechanism used—i.e., a proposed transfer of fee simple title to McKinney without restrictions and hope for his future generosity—was the best deal the Debtor could negotiate.

After Hasbrouck purchased the Assets at auction in accordance with the terms and conditions under which they were offered for sale, the Debtor renegotiated a revised agreement with McKinney which would place restrictions on the title and provide the Debtor an option to repurchase the Assets. Had such an offer been made prior to the sale, the Court would have been obligated to consider such offer. However, no such offer was made and Hasbrouck is entitled to the benefit of its bargain.

The Debtor and Altomare's statement of the Board of Directors' "understanding" is simply that the Board thought that McKinney would be generous to the Debtor, even though he desired the entire power to be in his hands. The parol evidence rule prohibits the Board of Directors from saying it "misunderstood" its Agreement.

Hasbrouck appeared at the Bankruptcy Court sale hearing with counsel in response to a sale initiated by and noticed and advertised by the Debtor. Notice was accurate and reasonable; the price is fair and reasonable; Hasbrouck bid on and purchased the Assets in good faith; and the Debtor itself indicated, and we so find, that an emergency existed.

There is no question that Hasbrouck submitted the highest and best offer. Hasbrouck outbid McKinney at a public auction and purchased the Assets on the same terms and conditions offered by McKinney.

McKinney was not bound by his intent to operate the Assets as a golf course. The Agreement called for the title to be free of restrictions. In the absence of Hasbrouck at the court-conducted auction, McKinney could have purchased the Assets for $350,000 and, if he desired, re-sell them to Hasbrouck free of restrictions the next day for $510,000.

The integrity of the Bankruptcy Court sale procedures should be protected. The sale of the Debtor's Assets pursuant to the Bankruptcy Court's Sale Confirmation Order entered May 1, 1991 should proceed as authorized therein.