## In re PLABELL RUBBER PRODUCTS, INC., Debtor.

### Bankruptcy No. 91–34578.

United States Bankruptcy Court, N.D. Ohio, W.D.

Nov. 16, 1992.

See also 140 B.R. 179.

**476**

Thomas J. Schank, Toledo, OH, for debtor.

Henry J. Riordan, U.S. Dept. of Justice, Washington, DC.

Barry Savage, Toledo, OH, for Ohio Citizens.

Mary K. Bentley, Office of the General Counsel Pension Benefit Guar. Corp., Washington, DC.

Amy Leizman, Office of U.S. Trustee, Cleveland, OH.

Mark Rose, Toledo, OH, for Fifth Third.

P. Michael Miller, Fort Wayne, IN, for ACRO.

Eric Britton, Toledo, OH, for ESOP.

Jeffrey Julius, Toledo, OH, for IBT Local 20.

## OPINION AND ORDER DENYING DEBTOR'S MOTION PURSUANT TO BANKRUPTCY RULE 6004 FOR AUTHORITY TO SELL REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on for hearing upon motion of Debtor in possession for authority to sell real and personal property free and clear of liens and objections thereto. Upon consideration of the evidence adduced at the hearing, the court finds that said motion is not well taken and should be denied.

### FACTS

On November 22, 1991, Debtor filed its voluntary petition under chapter 11 of title 11. Debtor, on October 1, 1992, filed the instant motion pursuant to Bankruptcy Rule 6004 for authority to sell real and personal property free and clear of liens. Debtor states that it is unable to obtain financing at a level adequate to permit continued long term operations and fund a plan and that in an effort to preserve its viability, it has accepted an offer to purchase from St. Clair Rubber Corporation, a company owned by the present employees of Debtor through an employee stock ownership plan (hereinafter referred to as ESOP). Debtor requests authority to complete the sale free and clear of liens, of substantially all of its assets to ESOP for $980,000.

The Pension Benefit Guaranty Corporation objected to Debtor's motion stating that the proposed sale is not authorized by 11 U.S.C. § 363(b), that Debtor has failed to demonstrate a sound business reason justifying the proposed sale, that Debtor has failed to describe its efforts to obtain financing or other purchase offers and that the sale will be of no benefit to unsecured creditors.

The United States Trustee filed comments to Debtor's motion stating that Debtor fails to establish a sound business purpose supporting the instant sale proposal, that the proposed sale should be conducted through a plan of reorganization after full disclosure and that Debtor fails to detail the efforts expended to solicit other offers.

The United States of America also objected to the proposed sale asserting that it holds a secured claim against all property and rights of Debtor for withheld income and Federal Insurance Contributions Act taxes which interest is not adequately protected by the proposed sale and that the purchase price is lower than that which may be obtained by liquidation of Debtor's assets. Ohio Citizens Bank also objected to the instant motion claiming that it is a secured creditor of Debtor and that the proposed sale fails to adequately protect its interests.

WIS, Inc., 3H Machine and Manufacturing Inc., Harry E. White, the Plabell Salaried Pension Plan and the Plabell Hourly Pension Plan objected to Debtor's proposed

sale for the reasons that Debtor has failed to present evidence of a forthcoming plan of reorganization, that the sale is of benefit to a select group and that Island Capital Corporation is another prospective purchaser.

ACRO Products, Inc., a prospective purchaser of Debtor, objected to the proposed sale claiming that it has offered a price substantially higher than the offer accepted by Debtor; it is also of more benefit to the creditors. ACRO, prior to the hearing held upon the instant motion, filed a revised offer to purchase reflecting its desire to purchase all of the assets of Debtor as a going concern free and clear of all liens for $1,175,000 and withdrawing the earlier environmental contingency. *See infra* p. 477.

Mr. Lawrence Friedeman, vice president of Debtor, testified that his duties involve administration, human resources and employee benefits. He stated that in March, 1992, he, on behalf of Debtor, sought additional working capital, but was unable to secure alternative financing. To date, Debtor has lost its second, seventh and seventeenth largest customers and its sales have declined in the past several months. It was Mr. Friedeman's opinion that Debtor was in a worse cash collateral position than it held at petition and that it would be unable to continue its operations unless new capital was infused.

According to Mr. Friedeman, although Debtor had not engaged a broker or otherwise advertised in an attempt to solicit purchase offers, interested parties had contacted Debtor concerning a purchase of its business. Mr. Friedeman explained that no professional services were obtained as he felt the notoriety of soliciting purchase offers would adversely impact Debtor's customer base and further exacerbate Debtor's deteriorating financial condition. Debtor received the instant offer from ESOP for $980,000, financed through the Fifth Third Bank, the City of Toledo, and the Port Authority. Additionally, ESOP would assume certain liabilities totaling $200,000. Based upon the lack of other interested purchasers, Mr. Friedeman opined that the ESOP offer represented a fair offer.

In discussing the ACRO offer to purchase Debtor's assets for $1,100,000, Mr. Friedeman stated that it contained an extraordinary request. That is, ACRO asked that a representative of Debtor and ACRO interview customers of Debtor to verify the continuity of the customer base in the event of ACRO's purchase of Debtor. Mr. Friedeman declined to accept this request and proposed no alternative procedure to enable ACRO to verify this information. Mr. Friedeman also did not provide the customer information that ACRO requested as he was concerned that because ACRO represented a potential competitor, disseminating this information to ACRO could adversely impact Debtor should ACRO not purchase Debtor's assets. ACRO's offer was also contingent upon a favorable environmental study.

Mr. Friedeman also expressed concern that should ACRO purchase Debtor, Debtor's 52 existing employees may no longer be employed by ACRO; acceptance of the ESOP offer would result in the retention of these 52 jobs. Furthermore, ACRO may relocate Debtor, rather than continuing operations in Toledo. In summary, Mr. Friedeman believed that acceptance of the ESOP offer was in the best interests of creditors and parties in interest.

On cross examination, Mr. Friedeman stated that there existed no emergency that required approval of the proposed sale by November 15, 1992, as referenced in the instant motion. Motion for Authority to Sell Real & Personal Property Free & Clear of Liens, Exhibit A at 2. The urgency of the sale results from the continued erosion of the viability of Debtor's business. Although Mr. Friedeman had been approached by ESOP regarding continuing in his current position, he had declined to discuss his future employment in order to avoid any potential conflict of interest. It was, however, his understanding that one of ESOP's financiers, the Port Authority, wanted to know whether Debtor's present management would continue. Finally, Mr. Friedeman stated that no disclosure state-

ment or plan of reorganization was contemplated by Debtor; preparation and research of same was not feasible.

Mr. Joseph Nachtrab, a certified public accountant for 17 years, testified that ESOP had employed him to conduct a feasibility study to determine if ESOP could purchase Debtor's assets and continue business operations, making a profit. Mr. Nachtrab explained that ESOP's financiers included the City of Toledo and the Port Authority which financing is based upon the business continuing in the Toledo area. Should Debtor's operations be relocated, this financing would be withdrawn.

Mr. Nachtrab explained that the ESOP purchase price was arrived at by valuing the income stream and applying a factor to determine the fair market value of Debtor as a going concern. In actuality, the price offered by ESOP is $1,092,000, representing cash of $980,000 plus the assumption of liabilities of $212,000 and subtracting $100,-000 cash on hand. Mr. Nachtrab stated that the liabilities assumed represented those that were necessary in order to maintain business operations; however, the pension benefits were not included in these liabilities.

Mr. Gregory Kosch, employed as vice president of commercial lending of the Fifth Third Bank, testified that his responsibilities include handling Debtor's financial funding. He indicated that Fifth Third had agreed to finance ESOP by extending a $650,000 term loan and a $200,000 line of credit loan to it. However, of these funds, only $100,000 would be advanced; $750,000 would be refinanced. His opinion regarding the ACRO offer was that Fifth Third, although it had a claim in excess of $1,100,-000, would agree to release of its lien in return for payment of $750,000 cash.

Mr. Charles Wilson testified in support of the ACRO Products, Inc.'s offer. He stated that he currently owns three molded rubber plants. ACRO, according to Mr. Wilson, had expressed an interest in the purchase of Debtor for a number of years. However, he indicated that before consummating the proposed offer, it would be necessary for ACRO to verify Debtor's customer base in order to determine the potential sales volume. This process could take between 15 and 30 days. To that end, he had executed a confidentiality agreement evidencing a covenant not to solicit or contact those customers disclosed by Debtor for a two year period. ACRO, prior to the hearing, extended an offer to ESOP, representing a 60–40 partnership, in favor of ACRO. Mr. Wilson indicated that ACRO had received a preliminary loan proposal from Comerica which would permit ACRO to pay cash to Debtor to obtain its assets. Union's Exhibit 2. ACRO had not pursued a final financing arrangement with Comerica as it wished to first verify the customer base. Based upon the testimony elicited at the hearing, Mr. Wilson opined that the offer extended to Debtor did not represent a bargain; he believes that the customer base may be eroding, affecting the potential sales volume.

## DISCUSSION

■ Debtor proposes to sell its business, including real and personal property, to ESOP for $980,000. The court notes in this opinion, as it stated during oral arguments, that this is the only issue before the court; potential approval of the ACRO offer is not before the court. Debtor's request is premised upon 11 U.S.C. § 363(b). As the parties argued, the controlling case in this circuit is *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir.1986).

Specifically, the sixth circuit, in *Stephens*, adopted the reasoning set forth in the seminal case of *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir.1983). That is, the instant sale may be authorized "when a sound business purpose dictates such action." *Stephens*, 789 F.2d at 390. To that end, this court may consider the following factors:

the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the

disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*Lionel,* 722 F.2d at 1071. *See also In re Titusville Country Club,* 128 B.R. 396, 21 B.C.D. 1449, 25 C.B.C.2d 192 (Bkrtcy. W.D.Pa.1991) (sound business purpose test has four requirements: 1) sound business reason; 2) accurate and reasonable notice; 3) adequate price; and 4) good faith).

Considering these factors, the court notes that the proposal anticipates sale of all Debtor's assets; there exists no proportionate value of the asset to the estate. Debtor's case has been pending for almost one year. Mr. Friedeman testified that Debtor does not anticipate the filing of a disclosure statement or plan of reorganization. No appraisal of the assets has been conducted and all proceeds will go to secured creditors. Although Mr. Friedeman opined that Debtor's business is declining and the urgency of the sale is premised upon this continued decline, no evidence was presented that would cause the court to conclude that the additional 15 to 30 days that ACRO needs to verify the customer base would result in a substantial diminution of value affecting a potential sales offer. Considering these factors, the court is persuaded that the instant motion is not well taken.

At this juncture, the court notes that although Debtor cited *Stephens* in support of the instant motion, the court finds the facts distinguishable. In *Stephens,* the operating chapter 11 trustee sought authorization to sell Debtor's only unencumbered asset, after concluding that Debtor was unable to operate at a profit. *Stephens,* 789 F.2d at 387. The only alternative available to the trustee was to discontinue Debtor's business operations, which would result in the forfeiture of the asset the trustee sought to sell. In the instant situation, although Debtor asserts that its business is deteriorating, it has no unencumbered assets. Furthermore, despite Debtor's ability to operate at a profit, the urgency of the § 363 sale has not been demonstrated. As previously alluded to, the court cannot find that Debtor's disclosure of its customer base to ACRO cannot be accomplished without jeopardizing a sale.

Statutory support for denial of Debtor's motion is also found in § 363(f) which permits a sale free and clear of liens if all lienholders consent; Debtor's motion is contested by lienholders, including the United States of America and Ohio Citizens Bank. Debtor's motion is not well taken. *See In re Channel One, Communications, Inc.,* 117 B.R. 493, 496 (Bkrtcy.E.D.Mo. 1990) (§ 363(f) permits the Debtor in possession to sell assets free and clear of liens and encumbrances with the liens and encumbrances to attach to the sale proceeds so long as such lienholders consent or the sale price is in excess of all liens and encumbrances against the property); *In re Oneida Lake Development, Inc.,* 114 B.R. 352, 356, 20 B.C.D. 843, 23 C.B.C.2d 143 (Bkrtcy.N.D.N.Y.1990) (§ 363(f)(3) authorizes sale only if the price is greater than the aggregate value of all liens on such property).

Additional factors with which the court is concerned is the lack of effort in soliciting other offers. Although Mr. Friedeman stated that Debtor chose not to expend funds by engaging a broker, Debtor also did very little in pursuing the ACRO offer. Mr. Friedeman testified that ACRO's verification of the customer base was extraordinary; yet, Mr. Wilson testified that a confidentiality agreement was executed, protecting Debtor. Furthermore, Mr. Wilson indicated that this process had been followed with regard to purchase of the other rubber plants currently owned by him. Lastly, Mr. Friedeman, on behalf of Debtor, suggested no alternative to comply with ACRO's customer verification request. The court cannot find that the ESOP offer represents a good faith purchase.

"Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or

the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3rd Cir.1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir.1978)). In the instant situation, Mr. Friedeman indicated that members of ESOP would have knowledge of Debtor's customer base and sales stemming therefrom. However, this information was not disclosed to ACRO, in any form. Such nondisclosure causes the court to conclude that the ESOP offer is based upon an unfair advantage of other bidders.

Furthermore, although Mr. Friedeman testified that he would not discuss his continued employment with Debtor, should the ESOP offer be approved, and that one of ESOP's financiers was interested in this information, the court is concerned that these discussions bear upon the integrity of the proposed sale. As a result, this court cannot sanction the proposed sale. *Abbotts Dairies*, 788 F.2d at 147 (the requirement that a purchaser act in good faith speaks to the integrity of his conduct in the course of the sale proceedings (quoting *Rock Indus. Mach., supra* )).

■ Finally, sales pursuant to § 363 must be weighed against the chapter 11 process, requiring disclosure.

A sale of substantially all of Debtor's property outside the ordinary course of business, and without a chapter 11 disclosure statement and plan, must be closely scrutinized.

*In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bkrtcy.C.D.Cal.1991) (citations omitted). That is, such a sale may not be employed to circumvent the creditor protections of chapter 11. *See Abbotts Dairies*, 788 F.2d at 150; *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1228 (5th Cir.1986) (we hold that when an objector to a proposed transaction under § 363(b) claims that it is being denied certain protection because approval is sought pursuant to § 363(b) instead of as part of a reorganization plan, the objector must specify exactly what protection is being denied). In the instant situation, objections have been premised upon Debtor's lack of disclosure and the lack of an adequate price. The court concurs with these objections.

In light of the foregoing, it is therefore

ORDERED that motion of Debtor in possession pursuant to Bankruptcy Rule 6004 for authority to sell real and personal property free and clear of liens be, and hereby is, denied.