**In re WEATHERLY FROZEN FOOD GROUP, INC., Debtor.**

**Bankruptcy No. 91–32375.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Nov. 18, 1992.

Donna Weaver, Toledo, OH, for debtor.

Catherine Barr, Boston, MA, for Fleet & MNC.

Delton Parks, Pres., Frostbite Brands, Inc., Grand Rapids, MI.

Thomas Schank, James Perlman, Toledo, OH, for Fleet & MNC.

John Roca, Toledo, OH, for Teamsters Local 20.

## OPINION AND ORDER GRANTING MOTION FOR AUTHORITY TO SELL

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on for hearing upon motion of Debtor in possession for authority to sell Debtor's real and personal property free and clear of liens pursuant to 11 U.S.C. § 363. Upon consideration of the evidence adduced at the hearing, the court finds that said motion is well taken and should be granted.

### FACTS

On June 14, 1991, an involuntary petition under chapter 7 of title 11 was filed by petitioning creditors against Debtor, engaged in the production and distribution of frozen ice cream novelty products. Thereafter, on June 27, 1992, a voluntary petition under chapter 11 of title 11 was filed by Debtor in the United States Bankruptcy Court for the Southern District of New York. As a result of Debtor's motion for transfer of venue, this court, on August 7, 1991, entered an opinion and order directing the clerk of the U.S. Bankruptcy Court, Southern District of New York to transfer Debtor's voluntary chapter 11 case to this court; that chapter 11 case was consolidated with the involuntary case. Debtor thereafter moved to convert the involuntary petition to a voluntary petition under chapter 11; that motion was granted on September 6, 1991.

On September 28, 1992, Debtor filed the instant motion for authority to sell Debtor's real and personal property free and clear of liens pursuant to 11 U.S.C. § 363. Debtor proposes to sell substantially all of its assets to Frostbite Brands, Inc., a subsidiary of Country Fresh, (hereinafter referred to as "Frostbite") for $3,825,000. (This sale includes assets of Toledo Frigid Lines, Inc., which entity filed a petition on December 10, 1991, see Case No. 91–34799; the total purchase price is $4,125,000, of which $300,000 is allocated to the assets of Toledo Frigid Lines, Inc. Motion for Authority to Sell at 2.) Assets excluded from the proposed sale include claims Debtor may have under 11 U.S.C. §§ 544, 547 and 548. Debtor states that all liens shall attach to the proceeds; all proceeds will be paid to secured creditors, specifically Fleet Credit Corporation and MNC Credit Corp. Debtor's counsel opined that these entities hold duly perfected priority liens on all real and personal property in an amount exceeding $11,500,000. Motion for Authority to Sell at 5–6.

Fleet Credit Corporation and MNC Credit Corp. filed, on November 12, 1992, a joinder to Debtor's motion evidencing their support of Debtor's proposed sale stating that it represents a sound business reason, that adequate and reasonable notice has been given and that the purchase price is adequate.

Mr. Michael Recca, president of Debtor, testified that he has been actively involved in the business of Debtor and was engaged to liquidate and sell Debtor's business. To that end, he had contacted several entities to solicit purchase offers since the summer of 1990, about one year prior to Debtor's petition. To date, Frostbite represented the only interested purchaser. Mr. Recca explained that approval of Frostbite's offer

was necessary as contracts with supermarkets were negotiated in November and renovations of the plant were necessary in the next few months. If the contracts were not negotiated or if the renovations were not made, the value of Debtor's assets would decline.

Mr. Recca explained that Debtor's operational costs, approaching $200,000 per month, are currently being paid by Steve's Homemade Ice Cream, Inc. (hereinafter referred to as Steve's), the sole customer of Debtor. Steve's does not own a production plant; rather, Debtor acts as a manufacturer for Steve's. Steve's currently owns the inventory and accounts receivable as it previously purchased Debtor's intangibles which include licenses and trademarks.

The proposed sale is of Debtor's hard assets. Mr. Recca opined that if the plant were closed, it would be difficult, at best, to solicit other purchase offers. No appraisal of these assets has been obtained by Debtor. If the sale is approved, Mr. Recca stated that he would submit his resignation and would have no further contact with Debtor. Furthermore, no officer or director of Debtor was related to or connected with the prospective purchaser.

Mr. Jeff Kramer, employed by Debtor as a controller, testified that his duties include overseeing Debtor's financial condition, including disbursing funds, invoicing accounts and providing information as requested. He explained that he prepares the expense request for Steve's; Steve's reviews same and wires funds to Debtor for disbursement. At this time, Steve's is funding only expenses as production is currently shut down. Mr. Kramer explained that during this shut down, the contracts are negotiated and the equipment should be rebuilt. Furthermore, the production building's roof leaks and should be repaired at this time. However, Debtor is without the necessary funds.

The process for negotiating the novelty ice cream contracts, referenced above, as explained by Mr. Kramer, involves Debtor and supermarkets agreeing to volume and space for the product. These contracts are generally negotiated in the fall and production begins in mid-January. Steve's, according to Mr. Kramer, funds the operational costs because the alternative to expending these funds is more costly. That is, Steve's would be forced to negotiate with another manufacturer to produce the necessary product, which manufacturer may be unable to produce the requested volume or would be unable to distribute same.

Mr. Delton Parks, president and director of Frostbite, was personally involved in the negotiations consummating in the proposed sale. Country Fresh is a cooperative, owned by over 400 shareholders, comprised mostly of supermarkets. No shareholder holds more than a 5% interest in Country Fresh. Mr. Parks stated that the purchase offer had been extended beyond the original October 30, 1992 closing date, reluctantly, as this is the time during which the contracts are negotiated; thus, it is necessary for Frostbite to determine where its product will be manufactured. Mr. Parks indicated that an appraisal had been conducted prior to the offer being extended and that a union contract with Debtor's employees had been proposed and supported. Debtor's intangible licenses, currently owned by Steve's, were of no interest to Country Fresh as those intangibles would require national marketing; Country Fresh is a regional marketer.

Mr. James Carpenter, a business representative for the Teamsters, which represents Debtor's union employees, testified that he has been involved with the discussions concerning a new contract with Frostbite. The union, consisting of about 102 employees, according to Mr. Carpenter, supports Debtor's proposed sale.

## DISCUSSION

■ Debtor's request is premised upon 11 U.S.C. § 363(b). The controlling case in this circuit is *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir.1986). In that case, the sixth circuit adopted the reasoning set forth in the seminal case of *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir. 1983). That is, the instant sale may be authorized "when a sound business pur-

pose dictates such action." *Stephens*, 789 F.2d at 390. To that end, this court may consider the following factors:

> the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*Lionel*, 722 F.2d at 1071. *See also In re Titusville Country Club*, 128 B.R. 396, 21 B.C.D. 1449, 25 C.B.C.2d 192 (Bkrtcy. W.D.Pa.1991) (sound business purpose test has four requirements: 1) sound business reason; 2) accurate and reasonable notice; 3) adequate price; and 4) good faith).

Considering these factors, the court notes that the proposed sale anticipates sale of substantially all Debtor's assets; the only exclusions are any claims Debtor may pursue under the Bankruptcy Code. At this point, the court notes that on June 24, 1992, an order for Debtor to institute fraudulent conveyance action or in the alternative for abandonment of fraudulent conveyance claim to unsecured creditors was entered. That order granted Debtor until July 3, 1992, to retain special counsel to pursue said claims. An application for employment of attorney was filed on July 2, 1992 and approved on July 21, 1992. Debtor's case has been pending under title 11 for some seventeen months; however, based upon the testimony of Messrs. Recca and Kramer, Debtor has been negotiating the instant sale for some two years, beginning prior to the filing of Debtor's petition. No appraisal of Debtor's assets has been conducted; however, the evidence adduced at the hearing causes the court to conclude that the instant sale represents the only viable sale of Debtor's assets and if not consummated imminently, may be withdrawn.

Finally, regarding the factors referenced above, the court is convinced that consummation of this sale is urgent. As the testimony reflected, during this time, contracts for product volume are being negotiated, with production of same to begin early next year. If these contracts are not obtained, the value of Debtor's business will be substantially reduced. Also, Debtor's plant and equipment should be inspected during this time for repairs and maintenance. Debtor is without the necessary funds. Additional delay may result in further deterioration of Debtor's plant and equipment, causing a further reduction of the value of Debtor's business.

The court would also note that § 363(f) requires the consent of all lienholders before a sale free and clear of liens may be approved. Fleet Credit Corporation and MNC Credit Corp. have joined in supporting Debtor's proposed sale. *See supra* p. 2.

The court also finds that the instant offer represents a good faith offer, negotiated at arms length. First, negotiations have, as previously stated, been ongoing for some two years. *See supra* p. 481. Additionally, no officer or director holds any interest or is otherwise related to the prospective purchaser. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3rd Cir.1986) ("typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir.1978))). In fact, no entity holds an interest in Country Fresh in excess of 5%. *See supra* p. 482. Finally, regarding good faith, Mr. Recca testified that he had been engaged to liquidate Debtor and, to that end, had contacted several entities in an attempt to solicit offers; Frostbite represents the only interested purchaser. *See supra* p. 481.

■ The court, however, must weigh the instant sale pursuant to § 363 against the chapter 11 process, requiring disclosure. A sale of substantially all of Debtor's property outside the ordinary course of

business, and without a chapter 11 disclosure statement and plan, must be closely scrutinized.

*In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bkrtcy.C.D.Cal.1991) (citations omitted). That is, such a sale may not be employed to circumvent the creditor protections of chapter 11. *See Abbotts Dairies*, 788 F.2d at 150; *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1228 (5th Cir.1986) (we hold that when an objector to a proposed transaction under § 363(b) claims that it is being denied certain protection because approval is sought pursuant to § 363(b) instead of as a part of a reorganization plan, the objector must specify exactly what protection is being denied). In the instant situation, no objections have been raised to the instant sale and, upon review of the record herein, the court concludes that Debtor has given adequate notice and disclosure of the proposed sale; same will be approved. In light of the foregoing, it is therefore

ORDERED that motion of Debtor in possession for authority to sell Debtor's real and personal property free and clear of liens pursuant to 11 U.S.C. § 363 be, and hereby is, granted.