**In re GEORGE WALSH CHEVROLET, INC., Debtor.**

**Bankruptcy No. 90–02159–BKC–JJB.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Aug. 21, 1990.

---

Peter D. Kerth, Interco Corporate Tower, Clayton, Mo., for debtor.

Steven T. Stanton, Joel Kunin, Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, St. Louis, Mo., for Joseph and Mary Brenneisen.

James E. Hawk, Jr., Clayton, Mo., for GMAC.

Larry E. Parres, David Rubin, St. Louis, Mo., for Boatmen's Bank.

Donald B. Kramer, St. Louis, Mo., for First American Bank of Georgia, N.A.

Richard Levy, Latham & Watkins, Chicago, Ill. Julie L. Compton, St. Louis, Mo., for Nissan Motor Acceptance Corp.

Robert D. Will, Mountain Grove, Mo., for Will Motors.

Eric M. Martin, Valley Park, Mo., for Larry Frye Nissan, Inc.

Keith W. Harvey, Dallas, Tex., for First Extended Service Corp.

Frederick J. Dana, Asst. U.S. Atty., St. Louis, Mo.

James E. McDaniel, Randall F. Scherck, St. Louis, Mo., for General Motors Corp.

Roger A. Carnahan, Rolla, Mo., for Walsh's Individually.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

The hearing to consider the Debtor's Motion For Approval of Sale Of Debtor's Assets And Assignment Of A Lease was called on August 17, 1990. The Debtor's evidence included testimony from its General Sales Manager and from the prospective purchaser. Other evidence was presented on behalf of First Extended Service Corporation, listed by the Debtor as the holder of an unsecured claim, through the testimony of an unsuccessful bidder. At the conclusion of the hearing, the Court announced its determinations and orders from the bench.

The following entities filed written objections prior to the commencement of the hearing: General Motors Corporation; First Extended Service Corporation; and Nissan Motor Corporation in U.S.A. (a conditional objection). The United States Small Business Administration appeared by its Counsel and strenuously objected to any representation by the Debtor which might have suggested that the S.B.A. had entered into any agreement with the Debtor or with the prospective purchaser concerning the sale being considered here.

The Debtor commenced this Chapter 11 case by filing a voluntary petition for reorganization on May 8, 1990. Since that time, the Debtor's business operations have been dramatically reduced and perhaps ter-

minated prior to this hearing. While attempting to finalize the sale which is being considered here, the Debtor entered into certain agreements with certain secured lenders which resulted in the surrender of a substantial number of motor vehicles. Several other creditors had filed motions for relief from the stay or for the payment of administrative expenses. These matters were pending as of the commencement of this hearing.

The Debtor's written Asset Purchase Agreement provides in part for the payment of a cash price in the amount of $235,000.00; cash payments to the Debtor's principals in the amount of $25,000.00 each in exchange for certain covenants not to compete; a release from all personal liability on loans, encumbrances or obligations of every kind owed by the Debtor's principals to several of the Debtor's creditors; and a provision that the Purchaser is not to assume or be obligated to pay or satisfy any debt or obligation of the Debtor.

The written agreement also includes numerous contingencies including a purchaser financing contingency; a requirement that the purchaser is to obtain approval of a Nissan Dealer Sales and Service Agreement and a separate Chevrolet Sales and Service Agreement; a requirement that the purchaser conclude a separate transaction with a non-debtor entity for the purchase of the real estate and building which houses the Debtor's business; and a requirement that the purchaser obtain a commitment for floor plan financing of the post-sale business operations.

The holders of unsecured claims will receive no distribution from the proceeds of the proposed sale.

The evidence in the record strongly suggests that purchase offers from other interested entities may have resulted in a cash payment at least equivalent to that presented in this Asset Purchase Agreement without many of the contingencies summarized above, and with a much greater possibility that the business would continue to operate in the city of Rolla, Missouri. Furthermore, at the time of this hearing, the purchaser in the proposed agreement had not obtained the approval of the dealer sales agreements from either the Nissan Motor Corporation or the General Motors Corporation. It appeared very unlikely that General Motors was positioned to execute such an agreement in the present circumstances.

This matter is a core proceeding pursuant to Section 157(b)(2)(M) of Title 11 of the United States Code.

Although the testimony and evidence presented at this hearing concentrated on the Debtor's business operations and the terms of the proposed sale, the question presented here is a bankruptcy question. May the Debtor–In–Possession be authorized to sell substantially all of the assets of the estate, pursuant to Section 363(b) of Title 11, on an expedited basis and without the protection and disclosure of a plan of reorganization?

A similar question was presented in a case recently decided by this Court. In *In re Channel One Communications, Inc.* it was determined that

> A sale of substantially all of the Debtor's assets other than in the ordinary course of business and without the structure of a Chapter 11 Disclosure Statement and Plan is not prohibited by the Bankruptcy Code. *In re Lionel Corp.* 722 F.2d 1063 (2nd Cir.1983); *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3rd Cir.1986). However, in the absence of the protection and finality offered by a disclosure statement and plan, such a transaction pursuant to Section 363(b) requires specific authorization by the Court. The sale must be closely scrutinized, and the proponent bears a heightened burden of proving the elements necessary for authorization. *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.,* 77 B.R. 15, 17 (Bankr.E.D.Pa.1987).

*In re Channel One Communications, Inc.,* Order Approving Asset Purchase Agreement, 117 B.R. 493 (Bankr., EDMo. 1990).

■ The elements necessary for approval of this sale include:

**102**

1. A requirement that accurate and reasonable notice be given to all creditors and parties in interest;

2. The record must establish that there is a sound business purpose for the sale without a disclosure statement and plan;

3. The price to be paid must be fair and reasonable; and

4. The proponent must show that the sale does not unfairly benefit insiders or the prospective purchasers, or unfairly favor a creditor or class of creditors.

 The Asset Purchase Agreement presented in this matter attempts to obtain the stamp of approval of the Bankruptcy Court in a Chapter 11 case without satisfying the requirements or providing the protections of a disclosure statement and plan. During the period since the commencement of this case, and while the Debtor was concentrating its efforts on concluding this agreement, the Debtor was receiving the benefits provided to a Debtor–In–Possession, and the creditors were stayed from collecting their debts. In a Chapter 11 case, these benefits and stays were established by Congress with the anticipation that a disclosure statement and plan would provide an orderly mechanism for reorganization. Absent this orderly mechanism, liquidation of the Debtor's assets must be based upon a good business reason. *See, In re Lionel,* supra, at 1071.

There appears to be no sound business reason for the sale of substantially all of the estate assets in this case in the manner requested by the Debtor. Similarly, there appears to be no benefit to the estate from this sale, other than perhaps the benefits to be received by the Debtor's principals.

There is no assurance in the record that the business of the Debtor will be continued in the community it has served for the last ten years, if the present sale is approved.

The proposed sale attempts to produce results which, in the circumstances as shown to exist through the date of this hearing, could not be accomplished in a Chapter 11 plan. The purchase agreement alters the claims of certain secured creditors without their consent and without establishing that these claims are to receive a value not less than what would be received if the Debtor were otherwise liquidated or reorganized. Notwithstanding an attempt by the Debtor's General Sales Manager to orally and unilaterally amend the sale agreement, the written agreement which was noticed to creditors attempts to release certain non-debtors from guarantees and obligations, with no apparent benefit to the Debtor and without the consent of the other parties to the guarantees.

The Asset Purchase Agreement contains a great number of contingencies, the failure of any one of which would jeopardize the prospective purchaser's ability to operate the business after the sale, and could possibly frustrate the entire sale.

There is no basis in this record to support the need for the expedited procedure with which this sale has been presented to creditors, or to support the failure to submit the sale by means of a disclosure statement and plan.

The evidence at this hearing has established that the terms of the Asset Purchase Agreement have been substantially changed or are in the process of being materially changed without notice to the creditors and parties in interest. The prospective purchaser has testified that he is attempting to negotiate the assumption of a substantial portion of the secured debt rather than proceeding with the new financing as reported in the written agreement.

The copies of the Asset Purchase Agreement which were filed with the Court and otherwise made available for inspection by creditors did not include certain exhibits referred to in the body of the document, such as a list of executory contracts, and a list of the proposed distributees of the sale proceeds.

The notice to creditors did not adequately describe the nature of the other purchase offers received by the Debtor.

Neither the record at this hearing, nor the notice sent to creditors provided an acceptable appraisal of the value of the assets to be sold through this agreement.

Therefore, by separate order, the Debtor's motion to sell substantially all of its assets is denied.