**In re EQUITY MANAGEMENT SYSTEMS.**

**In re EQUITY TRUCK LEASING, INC.**

**Bankruptcy Nos. 92–3151–C–H, 92–3152–C–H.**

United States Bankruptcy Court, S.D. Iowa.

Jan. 6, 1993.

Samuel I. Kreamer, John P. Roehrick, Des Moines, IA, for debtor corporations.

Larry L. Seckington, Ankeny, IA, for Chapter 11 Trustee, Kenneth W. Cowman.

Anita L. Shodeen, Des Moines, IA, for the Unsecured Creditors Committee.

Jon P. Sullivan, Des Moines, IA, for Norwest Bank Iowa, N.A.

Larry M. Blumberg, Des Moines, IA, for drivers who are holders of rejected executory contracts.

James L. Snyder, for the U.S. Trustee.

## ORDER—APPLICATION TO ENTER INTO LONG TERM LEASE AND SALE WITH LNF CORPORATION

RUSSELL J. HILL, Bankruptcy Judge.

The Chapter 11 Trustee's Application to Enter into Long Term Lease and Sale with

LNF Corporation came on for telephonic hearing on December 23, 1992.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M). Upon having considered the record herein, the arguments and briefs of counsel, the court now enters its findings and conclusions pursuant to Fed. R.Bankr.P. 7052.

## FINDINGS OF FACT

1. Equity Truck filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 20, 1992, and relief was ordered on the same date. Equity Truck stated its business as being that of leasing "semi-tractors to independent contractors who have option to purchase vehicles at end of lease term."

2. Equity Management filed a voluntary petition under Chapter 11 on the same date and stated its business purpose was to enter into agreements with individuals and companies to lease the trucks owned by Equity Truck and to negotiate the sale of those trucks at the end of the lease.

3. Norwest Bank was scheduled as holding a secured claim in the amount of $3,554,000. This claim was incurred from April 1992 through July 1992 as a purchase money loan with a lien on truck titles. The value of the security was scheduled at $3,200,000.

4. Schedule G, Executory Contracts and Unexpired Leases, scheduled Midwest Connection, Inc., Des Moines, Iowa, as the lessee of ten tractor units with twenty-nine months remaining on the lease. Equity Truck was scheduled as a lessor of these units. These trucks were leased to Midwest Connection with an option to purchase. Norwest Bank approved this lease.

5. Schedule G also schedules single tractor units as being leased by Debtor to individual lessees. Some of these individuals negotiated lease-purchase agreements with Equity Truck. Norwest Bank approved and loaned money to some of these people so they could make the security deposit on the lease-purchase agreements. These contracts would have to be refinanced and this was one of the reasons Norwest Bank required each driver to be preapproved before Equity Truck could enter into the agreement.

6. On October 29, 1992 the Stipulated Order Appointing Trustee was entered. This order provided, inter alia, that the United States Trustee was to appoint a trustee pursuant to 11 U.S.C. § 1104; that said trustee was to operate Debtors' business during the next sixty days; that once appointed, the trustee was to remain in control of Debtors' business pending further order of the court; that Norwest Bank consented to the trustee's use of its cash collateral to pay the reasonable and ordinary expenses necessary for the operation of the Debtors' business during the next sixty days; that Roger French, Jr., president of the Debtor corporations, was to have no role in the management or operation of the Debtors' businesses; and that Norwest Bank's motion to convert these proceedings to a Chapter 7 case was to be continued to a date no earlier than sixty days after the entry of this order.

7. On November 6, 1992, the order approving Kenneth W. Cowman as Chapter 11 Trustee was entered herein.

8. On December 8, 1992, Trustee filed his Application to Enter into Long Term Lease and Sale with LNF Corporation for the lease of fifteen truck-tractors. A copy of the lease form was attached to the application and the application stated that the terms of the lease were: thirty-six monthly payments beginning thirty days after the execution of the lease; payments of $1,500.00 per month net to lessor-debtor; lessee is to be responsible for insurance, taxes, maintenance, repairs and upkeep; payments to be made directly by carrier for whom lessee will be working; and, one final payment of $25,000 to be made in the thirty-seventh month of the lease at which time lessee would be entitled to receive title to said vehicle. Said application recited that this proposed transaction would permit Trustee to reduce the number of company drivers and reduce the office staff. The transaction would also permit Trustee to pay Norwest Bank $1,200.00 per month per truck commencing approximately January

15, 1993. The amount to be paid to unsecured creditors is to be determined at a future date.

9. On December 17, 1992, the court ruled that the two cases, Equity Management Systems and Equity Truck Leasing, should be consolidated.

10. On December 18, 1992, Trustee filed his Application to Enter into Long Term Lease and Sale with DEF Express, Inc., for the lease of ten truck-tractors. A copy of the lease form was attached to the application and said application stated that the terms of the lease are as follows: there are to be thirty-six monthly payments with first and last month's payments in advance; payments are to be $1,600.00 per month net to lessor-debtor; lessee is responsible for insurance, taxes, maintenance, repairs and upkeep; and, there is to be one final payment of $25,000.00 in the thirty-seventh month of the lease at which time lessee would be entitled to receive title of said vehicle. The application further recited Trustee is to pay Norwest Bank the sum of $1,200.00 per month per truck commencing approximately January 15, 1993. The amount to be paid to unsecured creditors is to be determined in the future.

11. On December 18, 1992, Trustee filed his Application to Enter into Long Term Lease Sale with Midwest Connection, Inc., for the lease of twenty truck-tractors. A copy of the lease form was attached to said application and stated that the terms of the lease are: there are to be thirty-six monthly payments with first and last month's payments in advance; payments are $1,600.00 net to lessor-debtor; the lessee is responsible for insurance, taxes, maintenance, repairs and upkeep; and, there is to be one final payment of $25,000.00 which is to be paid in the thirty-seventh month on six of the truck-tractors and one final payment in the thirty-seventh month of $24,000.00 to be made on fourteen truck-tractors at which time lessee is to be entitled to receive title to said vehicles. Said application further recited that the lease covers a total of twenty truck-tractors, ten of which are already in the possession of the proposed lessee under a long-term lease entered on December 23, 1991. On January 1, 1993, the lease of those ten vehicles will be converted to the present lease proposal. Lease payments are to commence on January 1, 1993 on subject ten trucks and lease payments on the remaining ten trucks would commence on delivery to the lessee. This transaction would permit Trustee to pay Norwest Bank the sum of $1,200.00 per month per truck commencing approximately January 15, 1993. The amount to be paid to unsecured creditors is to be determined in the future.

12. The applications to enter into long-term leases with DEF Express, Inc., and Midwest Connection, Inc., have not been set for a hearing as of this date.

13. Trustee has amended his application to provide that Norwest Bank may have a replacement lien on the leases and, to the extent of the normal payments, the proceeds of the leases.

## DISCUSSION

Trustee has made application pursuant to 11 U.S.C. § 363 to enter into contracts for the lease of truck-tractors for the benefit of the estate. Norwest Bank, the principal secured creditor, has objected to the approval of these proposed agreements. All other parties in interest, including the unsecured creditor's committee, are in favor of the approval of the long-term lease and sale or have not objected to the applications.

### NATURE OF DEBTORS' BUSINESS

11 U.S.C. § 363(c)(1) provides that if the business of the debtor is authorized to be operated under § 1108 of the Bankruptcy Code, and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing. 11 U.S.C. § 363(e) provides that notwithstanding any other provision of this section, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hear-

ing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

The schedules indicate that Debtors' principal course of business prepetition was the leasing of truck-tractors to independent contractors who had an option to purchase the vehicles at the end of the lease terms. The schedules further reveal that there was a lease of ten tractor units to Midwest Connection, Inc., a lease of multiple units to a single independent contractor. Accordingly, Debtors' business was the lease and sale of truck-tractor units and the proposed contracts fall within this ambit of business. It is without dispute that Norwest Bank has a security interest in the truck-tractors, which are the subject matter of the applications.

## CONSIDERATION OF ALL PENDING APPLICATIONS

The only application set for hearing on December 23, 1992 was the application to enter into a long-term lease and sale to LNF Corporation. However, the applications to enter into long-term leases and sales to DEF Express, Inc. and Midwest Connection, Inc. are almost identical and raise the same issues of fact and law. The court has determined that the proposed long-term leases are within the ordinary course of Debtors' business. The Trustee has determined that the most feasible method of producing a cash flow from these businesses is to enter long-term leases with a buy-out at the end of the leases. The three applications involve all the truck-tractors and this procedure will work only if all three leases are considered as a whole. Since the Trustee may enter into those transactions without notice and hearing, subject to an objection of adequate protection, and since the applications raise the same issues, the court will consider all the applications in order to conserve valuable time and resources of the parties and the court.

## ADEQUATE PROTECTION

Norwest Bank objects to the proposed long-term leases and sales on the basis that it is not adequately protected. Trustee has classified Norwest Bank as an underse-

cured creditor. Norwest Bank agrees with this classification. The validity of Norwest Bank's lien on the truck-tractors has not been disputed. The record also reflects that Norwest Bank's liens are the only liens on those trucks.

■ 11 U.S.C. § 363(f)(3) provides that the Trustee may sell property under § 363(b) or (c) free and clear of any interest in such property of an entity other than the estate, if such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property. As an undersecured creditor, Norwest Bank is entitled to protection in an amount equal to the value of the collateral. *United States Ass'n v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). "Value" as used in § 363(f)(3) is the equivalent of the term "value" as used in 11 U.S.C. § 506(a). *Matter of WPRV–TV, Inc.*, 143 B.R. 315, 320–21 (D.Puerto Rico 1991). Norwest Bank's lien is only valid to the extent of the value of the interest in the truck-tractors under 11 U.S.C. § 506(a). Pursuant to § 363(*o*) the Trustee has the burden of proof on the issue of adequate protection and Norwest Bank has the burden of proof on the issue of the validity, priority, or extent of its interest in the collateral.

■ The appraisal submitted by the Trustee reflects that the Model 379, 1992 Peterbuilts have the following values:

| | |
|---|---|
| Wholesale | $55,000 |
| Retail | $65,000 |
| Fair Market Value | $60,000 |

The Model 377, 1992 Peterbuilts have a value of $5,000 less than the Model 379's. There are twenty-nine Model 379 units and fifteen Model 377 units. The appraiser giving the above appraisal would be a buyer of those trucks if the Trustee were willing to sell them. While it was not submitted, Norwest Bank does have another appraisal. This appraiser collects trucks and sells them at auction on a commission basis. This appraisal sets the value of the Model 379s at $68,500 per unit and the Model 377s at $65,750 per unit, less commission of 8½% and cost of sale of 1% per unit. Even if

Norwest's appraisal were accepted, the adequate protection offered by Trustee to Norwest Bank would be sufficient to protect its interest. The Trustee computes the payment to Norwest Bank over the leases' thirty-seven months at $70,960.00 per unit, net of administrative expenses. The total pay back would be $74,331.00 per unit. Trustee also offers a replacement lien on the leases and the proceeds of the leases, to the extent of the normal payments. This lien adequately protects Norwest Bank's interest in the collateral.

## LONG–TERM LEASES PRIOR TO FILING OF DISCLOSURE STATEMENT AND PLAN

■ The long-term leases and ultimate sale of the principal assets of the Debtors is proposed prior to the filing of a disclosure statement and a plan. The absence of a disclosure statement and plan governing the potential liquidation of the Debtors causes some concern. A sale of substantially all of the assets of the Debtors without a disclosure statement and plan is not prohibited by the Code, even when the sale is not in the ordinary course of business. *In re Channel One Communications, Inc.,* 117 B.R. 493, 496 (Bankr.E.D.Mo. 1990) (citing *In re Lionel Corp.,* 722 F.2d 1063 (2nd. Cir.1983)). The court has determined in this case that these long-term leases and sales are within the ordinary course of Debtors' business. Notwithstanding this conclusion, this transaction still requires scrutiny of the court.

The cases of *Titusville Country Club v. Pennbank (In re Titusville Country Club),* 128 B.R. 396 (Bankr.W.D.Pa.1991); *In re George Walsh Chevrolet, Inc.,* 118 B.R. 99 (Bankr.E.D.Mo.1990) set forth factors the court should consider in deciding whether to approve a sale not in the ordinary course of business of all, or substantially all of a debtor's operating assets, prior to the filing of the disclosure statement and plan by a debtor. The factors are as follows:

(1) Whether accurate and reasonable notice has been given to all creditors and parties in interest;

(2) Whether there is a sound business reason for the sale without a disclosure statement and plan;

(3) Whether the purchase price is fair and reasonable;

(4) Whether the proposed sale does not unfairly benefit insiders or proprietary purchasers, or unfairly favor a creditor or class of creditors.

*Titusville Country Club,* 128 B.R. at 399; *George Walsh Chevrolet,* 118 B.R. at 101–102. The burden of proving that the leases are in the best interest of the estate prior to the filing of the disclosure statement and plan is on the Trustee. *In re Wilde Horse Enters., Inc.,* 136 B.R. 830, 841 (Bankr.C.D.Cal.1991).

Notwithstanding the fact that these leases and sales are within the ordinary course of Debtor's business and notice and hearing are not required, the Trustee has given notice of the contemplated long-term leases and a requirement of notice has been satisfied.

There are sound business reasons for approving these sales without a disclosure statement and plan. The long-term leases are not immediate sales and provide a flow of cash to the estate which will not only protect Norwest Bank's interest in the estate assets but also provide a dividend to the unsecured creditors. The assets are depreciating and it is imperative that the truck-tractor units be placed in an income-producing mode as soon as possible. Trustee prays that the court give immediate attention to these applications as the proposed lessees have use for the truck-tractors and any delay could prevent the consummation of the leases. Delaying the approval of the leases until the procedures for approval of a disclosure statement and confirmation of a plan are completed could prevent the lease and sale of these units. A good business opportunity is presently available so long as there is prompt action. These cases were filed on October 20, 1992, so the Trustee has taken the initiative in moving the case toward a plan within a relatively short time of the filing. There is a good likelihood that a plan of reorganization will be proposed in the near future.

Accordingly, a sound business reason has been shown.

As has been previously discussed, the terms of the long-term leases and sales are fair and reasonable.

Norwest Bank proposes a Chapter 7 liquidation, a "fire sale" of the assets. This type of liquidation would benefit the Bank alone. The long-term leases and ultimate sales of the assets as proposed by the Trustee would protect not only the interest of Norwest Bank but also the interest of the other classes of creditors. Accordingly, the fourth factor has also been satisfied.

The Trustee has demonstrated good faith by proposing a disposition of assets which generates more funds for the estate and is therefore in the best interest of the estate. The transaction, as proposed by the Trustee, fully complies with the nature of debtors' businesses. The only difference is that Trustee does not propose to trade in these truck-tractors on newer makes and continue the leasing business, unless the Debtor companies can be sold.

The Trustee has carried his burden in showing that the leases are in the best interest of the estate prior to the filing of a disclosure statement and plan.

The Bankruptcy Code provides for liquidating plans of reorganization. *See* 11 U.S.C. §§ 1123, 1141. Liquidation of the assets pursuant to a plan under Chapter 11 provides greater benefit to the estate than does a conversion to Chapter 7 as there does not appear to be a continuing loss to the bankruptcy estate.

## ORDER

IT IS ACCORDINGLY ORDERED, as follows:

1) The application to enter into a long-term lease and sale to LNF Corporation is granted.

2) The application to enter into long-term lease and sale to DEF Express, Inc., is granted.

3) The application to enter into long-term lease and sale to Midwest Connection, Inc., is granted.

4) Norwest Bank Iowa, N.A., shall have a security interest in each of the vehicles, lease and the proceeds of the lease.