**In re STAR DYNAMICS CORPORATION,**
**Debtor.**

**No. 13–59657.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Signed Oct. 31, 2014.

---

Thomas R. Allen, Richard K. Stovall, Allen Kuehnle Stovall & Neuman LLP, Columbus, OH, Michael J. Sullivan, Womble Carlyle Sandridge & Rice LLP, Atlanta, GA, for Debtor.

Lawrence Hackett, Mary Anne Wilsbacher, USDOJ–Office of the U.S. Trustee, Columbus, OH–for U.S. Trustee.

### *MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION TO SELL SUBSTANTIALLY ALL ASSETS AND DISMISSING CASE (DOC. NOS. 316 AND 359)*

CHARLES M. CALDWELL,
Bankruptcy Judge.

This Memorandum Opinion and Order serves as the Court's findings of facts and conclusions of law for the Motion to Sale Substantially all Assets filed on behalf of Star Dynamics Corporation ("Debtor"), and the Court's Order to Show Cause for Conversion or Dismissal. Based upon the testimony, statements of counsel and review of the pleadings, the Court has determined that the proposed sale is not in good faith and does not serve any sound business purpose, and that the interests of the estate and all its creditors are best served by dismissal of this Chapter 11 proceeding. The bases for these decisions follow.

On December 10, 2013, the Debtor voluntarily filed this Chapter 11 proceeding, and on that date, its representatives became fiduciaries for the interests of the estate and all of its creditors. Mr. Thomas R. Becnel ("Becnel"), a real estate developer, holds the controlling interest in the Debtor (90%), and Dr. R. Jerry Jost ("Jost") holds the minority interest (10%). Given Jost's technical background; however, he is in charge of the Debtor's operations. Becnel acquired his interest in the Debtor to diversify investments and because he thought the technology offered by the Debtor was revolutionary. The record indicates that Becnel has advanced in excess of $32,000,000.00 to the Debtor, in addition to approximately $3,325,000.00 on a post-petition basis.

The Debtor develops and installs military grade radar systems for the United States Government and its allies, and is subject to laws, rules, licensure requirements and regulations that govern and circumscribe the development and sale of products and technology. Debtor's customers include, in relevant part, the Israeli Ministry of Defense ("IMOD"), and General Dynamics C4 Systems, Inc. ("GDC4"). Because of state secrets and security concerns, the Debtor is obligated to protect data, technology, intellectual property, etc. entrusted to its care.

From the beginning, the Debtor represented that it filed this case to sell the business as a going concern, including spreadsheets used to calculate radar performance. The ownership of these spreadsheets spawned litigation in state court filed by BAE Systems Technology Solutions and Services, Inc. ("BAE"). The Debtor removed that litigation to the United States Bankruptcy Court on December 20, 2013, and represented that a prompt resolution of this ownership dispute was critical to the consummation of a going concern sale.

On January 16, 2014, the Court approved the retention of Sagent Advisors, LLC ("Sagent") to broker a sale of the business, including the spreadsheets. Next, on February 21, 2014, the Debtor commenced an adversary proceeding, to determine its property rights in the spreadsheets *(Star Dynamics Corporation v. BAE Systems Technology Solutions & Services, Inc., Adv. No. 14–2061)*, and a three-day trial was concluded on July 16, 2014. Following the trial the Debtor and BAE filed memoranda regarding whether the Court should reconsider evidentiary rulings during the trial. In addition, post-trial the parties litigated whether the Court should order redaction of portions of the trial transcripts.

In the midst of this flurry of post-trial activity, and on August 11, 2014, the Debtor furloughed all employees and shut its doors to customers. According to counsel for the Unofficial Employee Committee ("Committee"), the Debtor failed to pay its employees for services from and after July 20, 2014, and they were not reimbursed travel and other expenses incurred post-petition. In total, the Debtor owes its employees a balance of approximately $370,000.00. The employees were not alone in this regard. The Debtor even failed to pay its own expert witness that testified during the three-day trial, leaving the estate with an administrative expense claim ($15,434.00).

Eleven days later on August 22, 2014, the Debtor filed its Motion to Sell Property that included all assets, excluding the disputed spreadsheets. Despite the complexity of the transaction and apparent effort expended in its preparation, the Court was unaware of this intention and/or the cessation of business operations and efforts to consummate a going concern sale. Indeed, it appears that at least some of Debtor's creditors, employees and customers were also unaware given the rash of objections that soon followed. Objecting parties included, in relevant part, IMOD, GDC4, the Committee and BAE. The asserted lack of good faith of the sale terms and preceding events drove the speed and scope of the parties' objections.

The Court now turns to a summary of the relevant sale terms and actions taken in contemplation of a sale. First, in May 2014 Becnel, through his wholly owned corporation, Resort Development of Destin, Inc. ("RDDI") and as a guarantor, purchased the blanket security interest and claim of Whitney Bank for $6,742,953.40. This amount is in addition to Becnel's secured claim of approximately $3,325,000.00, representing post-petition advances authorized by the Court. Becnel testified that by June of 2014 he could no longer fund the Debtor, and advised Jost to start shutting the business down. According to Becnel's testimony, he also informed GDC4 of this decision, and unsuccessfully offered to sale the Debtor's business to GDC4 at a substantial discount. Becnel testified that he also unsuccessfully sought to sale a portion of the Debtor's assets to IMOD.

In addition, at some point prior to the proposed sale Becnel formed a Florida limited liability company, known as Mwagusi, LLC ("MLLC"), to serve as the prospective purchaser. Becnel testified that MLLC is not an operating company but serves merely as an investment vehicle. Becnel named MLLC after an African mission funded by Becnel. On the paramount issue of price, MLLC will pay $5,000,000.00 for all assets of the Debtor, excluding the disputed spreadsheets. The proposed transaction also excludes the provision of any cash since the proposed purchase price is in the form of a credit bid of RDDI's secured claim recently purchased from Whitney Bank.

According to the testimony of Becnel and Jost, there is no current appraisal to support the offered price. Becnel testified that he thought the remaining parts had a liquidation value of approximately $500,000.00. In addition, the testimony of both Becnel and Jost demonstrate that there were no price negotiations, and the Debtor did not have separate legal counsel to preserve its interests. Instead, the focus appears to have been upon paying select claimants, including the transfer of a $300,000.00 condominium. Further, to compromise the sale objection of IMOD, Becnel agreed to pay it $2,900,000.00.

All this leads to the question what remains for the estate and its other creditors—what possible sound business justification can there be for this transaction in contrast to solely serving the interests of insiders. *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir.1986); *In re Country Manor of Kenton, Inc.*, 172 B.R. 217, 220 (Bankr.N.D.Ohio 1994); *In re The Landing*, 156 B.R. 246, 249 (Bankr. E.D.Mo.1993). Further, after cessation of business operations and filing of the sale motion, the Court must consider what disposition of the case will best serve the interests of all creditors and the estate; i.e., conversion to Chapter 7 or dismissal. 11 U.S.C. § 1112(b)(1); *In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 60–63 (6th Cir. BAP 2013); *In re Smith*, 2014 WL 3534048, *5–*7 (Bankr.W.D.Ky.2014).

Just a review of the numbers paints a bleak picture. First, according to the claims register there are 114 claims totaling $111,052,409.29, including $13,064,668.87 in secured claims, $17,304.08 in priority claims and $10,267.00 in administrative claims. These amounts may be subject to dispute, but on the other hand, they also may not include costs that have arisen because of the abrupt cessation of business operations, leaving contractual and other obligations unfulfilled.

In addition, after any sale it is not clear that the Debtor would have sufficient resources to fund claims litigation.

Second, according to the last operating report filed by the Debtor, that covers the month of July 2014, it has incurred $5,777,104.81· in post-petition liabilities. As of the end of July 2014, the Debtor reported post-petition operating losses of $2,787,566.99, and only $53,279.05 in bank deposits. The Debtor has yet to file an operating report for the eleven days of operations in August 2014. Further, since the July 2014 operating report, the landlord for the Debtor's Virginia facility filed an administrative claim for rent and utilities totaling $66,277.46. In addition, Wells Fargo Financial Leasing, Inc. filed an administrative claim for equipment ($11,-194.96).

In response to all these factors, the Debtor has only presented vague testimony from Becnel and Jost that perhaps operations could be resumed with licenses that maybe Becnel will assign to Jost after he acquires the Debtor's remaining assets and Jost forms a new company. At the hearing Jost testified that this purchase may be financed by Becnel through an assignment of the remaining balance of his secured claim, and that perhaps some of the Debtor's former customers may provide advance funding to resume operations, and that there may some unspecified interest from the United States Air force. Most significantly, the Debtor's representatives have failed to address how it will continue to safeguard any proprietary and/or sensitive information and military secrets entrusted to its care.

In addition, the Debtor's representatives assert that possibly there may be some value derived from the disputed spreadsheets, currently bound by the inchoate adversary proceeding commenced against BAE. The Debtor's representatives; how-

ever, have not identified a source of funding for the post-sale continuance of the litigation, in addition to any appellate costs and legal fees associated with the related pursuit of BAE's damage claims originated in state court. Apparently, the Debtor was unable to find someone to purchase these spreadsheets along with other assets after months of efforts by Sagent, in addition to earlier attempts by Morgan Stanley.

All these factors lead the Court to find and conclude that the Debtor has failed to establish that there is any sound business reason for the Court to approve the proposed sale. Further, the Court finds and concludes that the proposed sale is lacking in good faith as to the estate and all its creditors, and will only benefit insiders, Becnel and Jost. Finally, the Court finds and concludes that given the massive amount of claims, the cessation of operations and the lack of any further financing to fund a Chapter 11 administration, the dismissal of this case is the best means to serve the interests of the estate and all its creditors. In this manner, all creditors may resume their collection efforts in other courts, including the resumption of litigation pending in state court. Indeed, the Court will enter a separate order remanding the BAE litigation to the Ohio Court of Common Pleas.

For these reasons, the Court **DENIES** Debtor's Motion to Sell Substantially all Assets.

**FURTHER, THIS COURT ORDERS** the **DISMISSAL** of this case.

**IT IS SO ORDERED.**